UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| FRANK INFANTE, individually and on behalf of Hub City Motors and Car Wash, J.S. Motorsport, and family business interests,<br><br>Plaintiff,<br><br>vs.<br><br>WAGNER HOLDING TRUST; JOYCE WAGNER, Individually and as Trustee; ANGELA HASE, Individually and as Trustee; ROBERT M. RONAYNE; REBECCA L. RONAYNE; CITY OF ABERDEEN; PAULA NELSON, Zoning Officer; RONALD WAGER, City Attorney; MAYOR TRAVIS SCHAUNAMAN, Mayor; ABERDEEN POLICE DEPARTMENT; DAVE MCNEIL, Chief of Police; BRAXTON FARMEN, Patrol Officer; OFFICER #365 JOHN DOE, Aberdeen Police Department; OFFICER #400 JOHN DOE, Aberdeen Police Department; OFFICER #371 JOHN DOE, Aberdeen Police Department; OFFICER #394 JOHN DOE, Aberdeen Police Department; OFFICER #393 JOHN DOE, Aberdeen Police Department; MATTHEW TYSDAL, Attorney for Wagners; CRAIG MATSON, Assurance Alliance Representative; WAGNER HOLDING TRUST LLC; ROBERT RONAYNE P.C. (ROBERT RONAYNE LAW OFFICE P.C.); REBECCA RONAYNE P.C. (LAW OFFICE P.C.),<br><br>Defendants. | 3:25-CV-03019-ECS<br><br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, DENYING AS MOOT PLAINTIFF'S MOTION TO APPOINT COUNSEL, AND § 1915 SCREENING FOR DISMISSAL |

On August 26, 2025, Plaintiff Frank Infante, proceeding pro se, filed a Complaint in this Court alleging various federal civil rights claims under 42 U.S.C. §§ 1983 and 1985 and state-law claims against the City of Aberdeen, South Dakota; its mayor; its zoning officer; its police force; its counsel; its insurer's claims adjuster; a trust that bears the same last name as his landlord (a limited liability company); the trustees of that trust; counsel for his landlord; and the counsel through which he makes his lease payments. Doc. 1; Doc. 1-2 at 12, 35, 80, 86.

I.  **Motion for Leave to Proceed In Forma Pauperis**

Mr. Infante moves for leave to proceed in forma pauperis. Doc. 2. "A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit." Hinton v. Collet (Bishop Dudley Hosp. House), No. 4:24-CV-04181-ECS, 2025 WL 775531, at *1 (D.S.D. Mar. 11, 2025) (citing 28 U.S.C. § 1915(a)(1)); Lujano v. Omaha Pub. Power Dist., 30 F.3d 1032, 1034 (8th Cir. 1994). Doing so ensures "that indigent persons will have equal access to the judicial system." Greaser v. Dep't of Corr., 145 F.3d 979, 985 (8th Cir. 1998) (citation omitted). In forma pauperis status is a privilege, and the decision whether to grant it "is within the sound discretion of the trial court." Hinton, 2025 WL 775531, at *1 (citing Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987) and quoting Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983)). An applicant qualifies to proceed in forma pauperis because of his economic status, but he need not "demonstrate absolute destitution." Id. (quoting Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000)); Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam).

After review of Mr. Infante's application, Doc. 2, this Court finds he has insufficient funds to pay the filing fee. Mr. Infante's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

**II.     Claims in Mr. Infante's Original Complaint**

In a previous order, Infante v. Wagner Holding Trust, No. 3:25-CV-03019-ECS, 2025 WL 2505609, at *1 (D.S.D. Sept. 2, 2025), this Court relayed its understanding of Mr. Infante's claims as follows:

Count I: Breach of Contract (Wagner Holding Trust, Joyce Wagner, Angela Hase). Doc. 1 at 2. Mr. Infante's lease agreement was breached when: (1) he was not permitted to purchase the leased property in full; (2) his landlord or its representatives unlawfully increased the price of full purchase; (3) Mr. Infante was forced to pay for repairs that his landlord was responsible for while his landlord ignored other needed repairs; and (4) his landlord orchestrated an effort to remove him from the property. Doc. 1-2 at 3, 11, 24–32, 88.

Count II: Fraudulent Misrepresentation and Inducement (Wagner Holding Trust, Joyce Wagner, Angela Hase). Doc. 1 at 2. The Court presumes this count relates to the same acts or failures to act recounted in Count I.

Count III: Civil Rights Violations under 42 U.S.C. § 1983 (City of Aberdeen, Paula Nelson, Aberdeen Police Department, Chief Dave McNeil, Mayor Schaunaman, Patrol Officer Farmen, John Doe Officers). Id. City actors are violating Mr. Infante's civil rights by: (1) selectively enforcing zoning and code enforcement actions against him; (2) making false arrests; (3) deleting DVR evidence of the city's unlawful conduct; (4) retaliatory targeting of Mr. Infante and his family; and (5) creating an "unconstitutional gag order" by requiring he only

communicate with an insurance claims adjuster regarding his claims. Doc. 1-2 at 37–39, 41, 43, 53, 57, 60, 77, 81.

Count IV: Conspiracy to Violate Civil Rights under 42 U.S.C. § 1985 (all Defendants). Doc. 1 at 2. Mr. Infante's landlord is coordinating with city officials, counsel, and the Aberdeen Police Department to target him, interfere with his license, and apply pressure "designed to remove [him] from the building." Doc. 1-2 at 88.

Count V: Abuse of Process and Retaliation (City Attorney Ronald Wager, Robert Ronayne, City of Aberdeen). Doc. 1 at 2. The Court presumes the abuse of process and retaliation count refers to the selective enforcement of zoning and code enforcement alleged by Mr. Infante. Doc. 1-2 at 37–39.

### III.    Effect of Mr. Infante's "Amendment to Complaint"

On August 28, 2025, Mr. Infante filed an "Amendment to Complaint." Doc. 7. The Court interprets Mr. Infante's "amendment" as distinct from "an amended complaint." "An amended complaint supersedes an original complaint and renders the original complaint without legal effect." In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000). As such, an amended complaint stands on its own legs; it allows the Court to understand the parties involved, the legal claims, and the factual support for those claims without incorporating the original. Hunter v. First Interstate Bank, No. 5:19-CV-5073-LLP, 2020 WL 3971624, at *3 (D.S.D. July 14, 2020).

Where, as here, an amendment is best understood when read in coordination with the earlier filed complaint, courts can consider the amendment a supplement and read the filings jointly. Kiir v. N.D. Pub. Health, 651 Fed. Appx. 567, 568 (8th Cir. 2016) (citing Cooper v. Schriro, 189 F.3d 781, 783 (8th Cir. 1999) (per curiam)). This Court proceeds accordingly.

4

First, the Court recognizes the naming of three new parties in Mr. Infante's supplement: Wagner Holding Trust LLC, Robert Ronayne P.C. (Robert Ronayne Law Office P.C.), and Rebecca Ronayne P.C. (Law Office P.C.). Doc. 7 at 1. Mr. Infante also supplements the individual names of Robert Ronayne and Rebecca Ronayne by including their middle initials (M. for Robert and L. for Rebecca). Id.; see Doc. 1 at 1.

The supplement supplies no facts but does include new legal theories. Synthesizing it with the Complaint and upon further consideration, the Court construes Mr. Infante's complete claims as follows:

Count I: Breach of Contract (Wagner Holding Trust LLC, Wagner Holding Trust, Joyce Wagner, Angela Hase). Doc. 1 at 2; cf. Doc. 7 at 1. Mr. Infante's lease agreement was breached when: (1) he was not permitted to purchase the leased property in full; (2) his landlord or its representatives unlawfully increased the price of full purchase; (3) Mr. Infante was forced to pay for repairs that his landlord was responsible for while his landlord ignored other needed repairs; and (4) his landlord orchestrated an effort to remove him from the property. Doc. 1-2 at 3, 11, 24–32, 88.

Count II: Fraudulent Misrepresentation and Inducement (Wagner Holding Trust LLC, Wagner Holding Trust, Joyce Wagner, Angela Hase). Doc. 1 at 2; cf. Doc. 7 at 1. The Court presumes this count relates to the same acts or failures to act recounted in Count I.

Count III: Civil Rights Violations under 42 U.S.C. § 1983 (City of Aberdeen, Paula Nelson, Aberdeen Police Department, Chief Dave McNeil, Mayor Schaunaman, Patrol Officer Farmen, John Doe Officers, Craig Matson, Robert Ronayne). Doc. 1 at 2. City actors are violating Mr. Infante's civil rights by: (1) selectively enforcing zoning and code enforcement actions against him; (2) making false arrests; (3) deleting DVR evidence of the city's unlawful

conduct; (4) retaliatory targeting of Mr. Infante and his family; and (5) creating an "unconstitutional gag order" by requiring he only communicate with an insurance claims adjuster regarding his claims. Doc. 1-2 at 37–39, 41, 43, 53, 57, 60, 77, 81.

Count IV: Conspiracy to Violate Civil Rights under 42 U.S.C. § 1985 (all Defendants). Doc. 1 at 2. Mr. Infante's landlord is coordinating with city officials, counsel, and the Aberdeen Police Department to target him, interfere with his license, and apply pressure "designed to remove [him] from the building." Doc. 1-2 at 88.

Count V: Abuse of Process and Retaliation (City Attorney Ronald Wager, Robert Ronayne, City of Aberdeen). Doc. 1 at 2. The Court presumes the abuse of process and retaliation count refers to the selective enforcement of zoning and code enforcement alleged by Mr. Infante. Doc. 1-2 at 37–39.

Count VI: Bad Faith / Insurance Misconduct (Craig Matson, Assurance Alliance Representative). Doc. 1 at 3.

Count VII: Interference with Business Relations (Robert Ronayne P.C. (Robert Ronayne Law Office P.C.), Rebecca L. Ronayne, Robert M. Ronayne, Rebecca Ronayne P.C. (Law Office P.C.)). Doc. 7 at 1. The Ronayne Law Firm and its individual attorneys interfered with Mr. Infante's business relationship with his landlord by preventing him from tendering payment to purchase the property. Cf. id.

Count VIII: Professional Misconduct (Robert M. Ronayne, Rebecca L. Ronayne). Id. The Ronayne attorneys allegedly engaged in professional misconduct by preventing Mr. Infante from tendering payment to purchase the property. Id.; Doc. 1-2 at 93.

In Mr. Infante's Amendment to Complaint, he further clarifies his request for relief. He requests the following relief: (1) $1,500,000 and transfer of deed and title of property subject to

lease-purchase contract against Wagner Holding Trust LLC; (2) $2,500,000 against Robert M. Ronayne P.C.; (3) $1,500,000 against Rebecca Ronayne; (4) $25,000,000 against the City of Aberdeen; (5) $45,000,000 against the Aberdeen Police Department; and (6) declaratory and injunctive relief against all Defendants preventing them from initiating or pursuing any foreclosure "and to preserve [his] contractual rights and possession of the property." Doc. 7 at 1, 3.

## IV.     Section 1915 Screening

"When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B)." Hinton, 2025 WL 775531, at *1 (citing Martin-Trigona, 691 F.2d at 857). The Court must dismiss if it determines that "the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." § 1915(e)(2)(B).

To state a claim on which relief may be granted means to include in a complaint sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). If that bar is met, the "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). That is because at this stage in the litigation, the Court assumes as true all facts well-pleaded in the complaint. Gunn v. Stearns, No. 4:25-CV-04034-ECS, 2025 WL 2416132, at *2 (D.S.D. Aug. 21, 2025) (citing Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995)).

The Court does not assume as true "legal conclusion[s] couched as . . . factual allegation[s]." Papasan v. Allain, 478 U.S. 265, 286 (1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a claim cannot survive. Id. (citation modified). This standard applies in equal force to pro se plaintiffs. Gunn, 2025 WL 2416132, at *2 (citing Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985)).

The Court begins by screening Mr. Infante's federal law claims. Just as it did when denying Mr. Infante's motion for temporary restraining order, this Court holds that although Mr. Infante appears "individually and on behalf of Hub City Motors and Car Wash, J.S. Motorsport, and family business interests," he is by law only permitted to represent his own interests. Infante, 2025 WL 2505609, at *2 (citing 28 U.S.C. § 1654). Accordingly, the Court considers Mr. Infante's claims only as to Mr. Infante.

### A.     Aberdeen Police Department is not a Suable Entity

The Court first must dismiss wholesale Mr. Infante's claims against Aberdeen Police Department. Aberdeen Police Department is not a juridical entity. See Seppanen v. Brown Cnty. Sheriff's Dep't, No. 1:24-CV-01017-ECS, 2025 WL 239137, at *2 (D.S.D. Jan. 17, 2025) (citing, inter alia, Ketchum v. City of West Memphis, 974 F.2d 81, 82 (8th Cir. 1992)). As such, it "is not amenable to suit." Id. For this reason, Mr. Infante's claims against Aberdeen Police Department are dismissed without prejudice.

### B.     Civil Rights Violations Under 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). "A municipality may be liable under § 1983 when an official municipal policy or custom caused a violation of a plaintiff's [constitutional] rights." Russell v. Hennepin Cnty., 420 F.3d 841, 846 (8th Cir. 2005) (citation omitted). "Before a municipality can be held liable, however, there must be an unconstitutional act by a municipal employee." Id. (citation omitted).

### 1.     Selective Enforcement of Zoning and Code Enforcement Actions

Mr. Infante first claims the City of Aberdeen is selectively enforcing zoning and code enforcement actions (and perhaps other laws) against him or his interests. Doc. 1-2 at 29, 37, 41; Doc. 7 at 3. While a government entity "retains broad discretion as to whom to prosecute," that discretion "is not unfettered." Wayte v. United States, 470 U.S. 598, 607–08 (1985) (citation modified). Selective enforcement of the law runs afoul of the Constitution when the selectivity is based on membership in a protected class or another "arbitrary classification, including the exercise of protected statutory and constitutional rights." Id. at 608 (citation modified).

To establish selective prosecution, Mr. Infante must show: (1) that he "has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted"; and (2) that his prosecution "was based upon an impermissible ground." United States v. Jacob, 781 F.2d 643, 646 (8th Cir. 1986) (citation modified).

As to the first prong, Mr. Infante fails to plead sufficient facts to plausibly state a claim. Mr. Infante produces utility bills to show "selective enforcement by city officials." Doc. 1-2 at 29–32. Mr. Infante explains the records "provide evidence of nonfunctional heating, cooling, and insulation issues." Id. at 29. The best the Court can understand, Mr. Infante is alleging that

9

the City is not prosecuting his landlord for these issues because of Mr. Infante's assertion of his civil rights. But if Mr. Infante is not being prosecuted, there is no selective prosecution, and no constitutional violation. As "a private citizen," Mr. Infante "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). This is so "even when the failure to prosecute [is] allegedly discriminatory." Pratt v. Helms, 73 F.4th 592, 594 (8th Cir. 2023) (quoting Parkhurst v. Tabor, 569 F.3d 861, 865–66 (8th Cir. 2009)).

In a similar vein, Mr. Infante faults Aberdeen Police for not investigating a vehicle that Mr. Infante claimed was following him. Doc. 1-2 at 41. But just as Mr. Infante lacks standing to bring a failure to prosecute claim, the same is true for a failure to investigate. Pratt, 73 F.4th at 595.

Finally, Mr. Infante produces two digital images of a vehicle parked in the same location taken approximately fourteen months apart, "demonstrat[ing] that a vehicle was allowed to remain in place for years without enforcement action." Doc. 1-2 at 37–39. Mr. Infante states "[t]his evidence shows a clear double standard in enforcement. While my businesses and vehicles associated with my property were subjected to zoning and code enforcement actions, this comparable situation was ignored by city officials." Id. at 37. Even if this claim relates to Mr. Infante individually, he fails to state any facts that would allow the Court to infer that others, *similarly situated*, were not prosecuted for similar offenses. While he calls the situation comparable, no information is provided about the persons related to the car nor the land on which it is parked to make that necessary determination.

As to the second prong, Mr. Infante does not allege membership in a protected class. See generally Docs. 1, 1-1, 1-2, 7. The basis for Mr. Infante's selective prosecution claim appears to

10

be his alleged assertion of his civil rights. See, e.g., Doc. 1-2 at 41 (mentioning "retaliatory targeting"). What precise act he is suggesting as the impetus for this retaliatory targeting is unclear. No facts are provided that would allow this Court to infer that any alleged prosecution was for an impermissible reason. The selective enforcement claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.     False Arrests

Mr. Infante claims he was subjected to "prior false arrests." Doc. 1-2 at 41. That is all Mr. Infante says on the matter. While false arrest is a cognizable claim under the Fourth Amendment, see Smithson v. Aldrich, 235 F.3d 1058, 1062 (8th Cir. 2000), no claim can survive without supporting facts. Iqbal, 556 U.S. at 679. The false arrest claim is dismissed without prejudice under § 1915(e)(2)(B)(ii).

### 3.     Spoliation of Evidence

Next, Mr. Infante accuses the City of destroying DVR footage "relevant to [his] legal claims and . . . specifically identified as evidence to support [his] complaints against the City of Aberdeen, its officials, and related parties." Doc. 1-2 at 43. Depending on the context, suppression or spoliation of evidence can serve as the basis of a § 1983 claim, or for sanctions. See, e.g., McKay v. City of St. Louis, 960 F.3d 1094, 1099–1100 (8th Cir. 2020); Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1035 (8th Cir. 2007). The Court need not delve into the finer points of which case law applies, however, because Mr. Infante fails to plead sufficient facts to support any spoliation claim.

Mr. Infante alleges that he "owned and operated a DVR security system" that recorded content material to his "pending complaints and anticipated litigation," and that he made the City

11

aware of that content. Doc. 1-2 at 43. He then "discovered that significant portions of DVR footage had been deleted or w[ere] no longer retrievable . . . despite [his] maintaining the DVR system and despite no authorization on [his] part for deletion of files." Id. What Mr. Infante does not do is explain how the City gained access to that content or rendered it useless. Presumably, the Court is to infer that because the City knew the footage existed, it must somehow be responsible for the deletion. That is too great a leap for the Court to undertake without any specific facts alleged in support of such a claim. The spoliation of evidence claim is dismissed without prejudice under § 1915(e)(2)(B)(ii).

### 4.    Retaliatory Targeting

Mr. Infante alleges he experienced retaliatory targeting. See, e.g., Doc. 1-2 at 41. The Court interprets his allegations as including: (1) zoning retaliation; (2) retaliatory treatment related to not enforcing code against his landlord (re: HVAC issues); (3) retaliation from Attorney Robert Ronayne in the form of preventing him from entering his business premises; (4) retaliation in the form of City employees deleting the DVR recordings; and (5) retaliation in the form of unprofessional language used in a letter from Craig Matson, claims adjuster. Doc. 1 at 2; Doc. 1-2 at 29, 34–35, 41, 43, 83.

"[Section] 1983 provides a vehicle for redressing claims of retaliation on the basis of the First Amendment." Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 986 (8th Cir. 2011) (citation omitted). "To establish a retaliation claim, [Mr. Infante] must show (1) [he] engaged in a protected activity; (2) a reasonable person would have perceived the alleged retaliatory action materially adverse; and (3) this adverse action was causally linked to [his] protected conduct." Sutherland v. Mo. Dep't of Corr., 580 F.3d 748, 752 (8th Cir. 2009) (citation modified). Mr.

Infante does not say what protected activity spurred this retaliation. Nor does he provide the Court any facts that would otherwise plausibly state a claim.

First, Mr. Infante lists "zoning retaliation" as an injury of his son, Matthew. Doc. 1-2 at 83. As stated above, Mr. Infante cannot represent his son. If Mr. Infante also considers himself a target of zoning retaliation, he pleads no facts tying the alleged zoning enforcement to any protected activity he engaged in.

Mr. Infante revives his selective enforcement claims here to argue the alleged selectivity is retaliatory. But however styled, the claims cannot survive because they retain the same defects discussed in Section IV(B)(1), supra.

One reason Mr. Infante's claim against Robert Ronayne cannot survive is because he submits no facts showing Attorney Ronayne was acting "under color" of any law when he prohibited Mr. Infante from entering the Ronayne Law Office. 42 U.S.C. § 1983. Mr. Infante only submits a letter from Attorney Ronayne making that prohibition "[i]n light of the threatening tone in the documents received [from Mr. Infante]." Doc. 1-2 at 35. The Ronayne Law Office receives payments Mr. Infante makes on his lease contract, which itself is with an LLC. Id. at 12, 35, 59. This is a private act. That Attorney Ronayne is a city councilman, id. at 57, does not alter the analysis. See Jones v. Clinton, 974 F. Supp. 712, 721 (E.D. Ark. 1997) ("[T]here is . . . no § 1983 liability if the challenged conduct is not related in some meaningful way either to the defendant's governmental status or to the performance of his or her duties.") (citing Martinez v. Colon, 54 F.3d 980, 986–87 (1st Cir. 1995)). One is acting under color of state law when he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West, 487 U.S. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). The Court is confident that Attorney

Ronayne can decide who enters his business premises with or without the authority afforded him by city council. And for Attorney Ronayne, as a private party, to be liable under § 1983, Mr. Infante must allege, "at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and [a] state actor." Mershon v. Beasley, 94 F.2d 449, 451 (8th Cir. 1993). Mr. Infante does not do that, and so he fails to state a claim upon which relief may be granted.

Mr. Infante's DVR deletion retaliation claim is a rehashing of his spoliation claim. In Section IV(B)(3), supra, this Court explained how Mr. Infante supplied no facts to support a theory that the City is responsible for the deletion of his DVR footage. For that reason, his similarly founded retaliation claim is dismissed.

The Court dismisses Mr. Infante's claim against Craig Matson because no reasonable person would perceive the language in Mr. Matson's letter as "materially adverse." Sutherland, 580 F.3d at 752; see Doc. 1-2 at 83 (Mr. Infante interpreting the phrase "Your communications are unproductive, unwelcome, and disruptive" as so unprofessionally hostile that it constituted retaliation).

Mr. Infante's retaliatory targeting claim is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

### 5. Unconstitutional Gag Order

Mr. Infante alleges he was subjected to an unconstitutional gag order. Doc. 1-2 at 81. The Court interprets this as Mr. Infante alleging he was subjected to an unconstitutional prior restraint on speech. "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." Alexander v. United States, 509 U.S. 544, 550 (1993) (citation

modified). Prior restraints forbid "the use of public places to say what [is] wanted to [be said]." Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 553 (1975). Because of "[o]ur distaste for censorship—reflecting the natural distaste of a free people," there is a "heavy presumption" that prior restraints of expression are constitutionally invalid. Id.; Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963).

Mr. Infante does not allege that he was prohibited from using any public fora to express himself. Rather, he locates an "unconstitutional gag order" in the instruction from City Attorney Ronald A. Wager to "[d]irect all future correspondence" regarding his claims to "the claims adjuster handling [his] file." Doc. 1-2 at 55, 82. Under that directive, "no channel of communication [was] foreclosed. No speaker [was] silenced. And no message [was] prohibited." Hill v. Colorado, 530 U.S. 703, 734 (2000). Attorney Wager merely directed future correspondence from Mr. Infante to the proper recipient. That Mr. Infante repeatedly disregarded the instruction, Doc. 1-2 at 80, demonstrates its lack of "censoring effect." Se. Promotions, Ltd., 420 U.S. at 552; see Hershey v. Jasinski, 86 F.4th 1224, 1234 (8th Cir. 2023) ("There is . . . no prior restraint unless a speaker must . . . get advance permission from a government official." (citation modified)). The prior restraint claim is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

C.  **Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1985**

Mr. Infante alleges that all Defendants are conspiring to violate his civil rights under 42 U.S.C. § 1985. Doc. 1 at 2. Because Mr. Infante does not specify what provision of § 1985 his claim falls under, this Court liberally construes the claim as arising under § 1985(3), which contemplates a conspiracy to deprive a person of equal protection of the laws.

> The elements for a conspiracy claim under § 1985(3) are: "(1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive [the plaintiff]

15

either directly or indirectly of [his] civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right."

Gunn, 2025 WL 2416132, at *10 (quoting Mettler v. Whitledge, 165 F.3d 1197, 1206 (8th Cir. 1999)). A claim brought under § 1985(3) requires the additional showing that "the conspiracy was fueled by 'class-based, invidiously discriminatory animus.'" Id. (quoting Andrews v. Fowler, 98 F.3d 1069, 1079 (8th Cir. 1996)).

The Court broadly construes Mr. Infante's Complaint as alleging that his landlord and various governmental and private actors have together conspired to violate Mr. Infante's civil rights to force him from his property. One reason Mr. Infante's claim must be dismissed is because it fails to cite "any facts indicating that the parties reached an agreement on this matter or that a meeting of the minds occurred." Id. Whether under § 1985(3) or the less stringent standard of civil conspiracy under § 1983, the absence of such a showing is fatal to the claim. Id. Mr. Infante's civil conspiracy claim is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

## V.    The Court Declines Supplemental Jurisdiction

What remains of Mr. Infante's Complaint are state law matters. Mr. Infante does not invoke this Court's diversity jurisdiction. 28 U.S.C. § 1332(a). Nor does any Defendant appear to be a citizen of a different state. "It is within the court's discretion to retain supplemental jurisdiction over plaintiff's state law claims after dismissal of the federal claims." Union Pac. R.R. v. Reilly Indus., 981 F. Supp. 1229, 1238 (D. Minn. 1997) (citing Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc., 77 F.3d 1063, 1068 (8th Cir. 1996)). Conversely, the Court "may decline to exercise supplemental jurisdiction . . . if [it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court finds it most prudent to allow

the courts of South Dakota to consider in the first instance matters particular to South Dakota law. The Court offers no opinion on the viability of these claims.

## VI.  Order

For the above reasons, and the record as it now exists before the Court, it is hereby:

ORDERED that Mr. Infante's "Amendment to Complaint," Doc. 7, currently docketed as a Motion to Amend Complaint, is construed as a supplement. The pending motion will be terminated. It is further

ORDERED that Mr. Infante's Motion for Leave to Proceed In Forma Pauperis, Doc. 2, is granted. It is further

ORDERED that the suit is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1367(c)(3). It is finally

ORDERED that Mr. Infante's Motion to Appoint Counsel, Doc. 3, is denied as moot.

DATED this 16th day of September, 2025.

BY THE COURT:

_____
ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE